UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK          FOR ONLINE PUBLICATION ONLY

-------------------------------------------------------------- X
SILVAN KURZBERG, PAUL KURZBERG,                :
YARON SHMUEL, OMER GAVRIEL                     :
MARMARI, and ODED OZ ELMER,                    :
                                               :
                            Plaintiff,         :         MEMORANDUM
                                               :         AND ORDER
            - against -                        :
                                               :         04 CV 3950 (JG)
JOHN ASHCROFT, former Attorney General of      :
the United States, JAMES W. ZIGLAR, former     :
Commissioner of the Immigration and            :
Naturalization Service, MICHAEL ZENK, former   :
Warden of the Metropolitan Detention Center,   :
DENNIS HASTY, former Warden of the             :
Metropolitan Detention Center, KATHLEEN        :
HAWK, former Director of the Federal Bureau of :
Prisons, LINDA THOMAS, former Associate        :
Warden of the Metropolitan Detention Center,   :
ROBERT MUELLER, Director of the Federal        :
Bureau of Investigation, KEVIN LOPEZ,          :
S. CHASE, MARIO MACHADO, WILLIAM               :
BECK, RICHARD DIAZ, C. SHACKS,                 :
SALVATORE LOPRESTI, STEVEN BARRERE,            :
J. MIELES, MICHAEL DeFRANCISCO,                :
MOUNBO [sic], M. ROBINSON, TORRES [sic],       :
RAYMOND COTTON, NORA LORENZO,                  :
LIEUTENANT BIRAR, LIEUTENANT BUCK,             :
LIEUTENANT T. CUSH, LIEUTENANT GUSS,           :
LIEUTENANT D. ORTIZ, and LIEUTENANT            :
J. PEREZ, believed to be employees of the Federal :
Bureau of Prisons, JOHN DOES 1-30, being       :
fictional first and last names, Corrections    :
Officers at the Metropolitan Detention Center, :
JOHN ROES 1-30, being fictional first and last :
names, Federal Bureau of Investigation         :
and /or Immigration and Naturalization Service :
Agents, and the UNITED STATES OF AMERICA,      :
                                               :
                            Defendants.        :
-------------------------------------------------------------- X

A P P E A R A N C E S :

  JAROSLAWICZ & JAROS
    150 William Street, 19th Floor
    New York, New York 10038
  By: Robert J. Tolchin
    *Attorneys for Plaintiffs*

  CHUCK ROSENBERG
    United States Attorney for the
     Eastern District of Virginia
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
  By: Dennis C. Barghaan, Jr.
    Larry Lee Gregg
    Robert W. Sponseller
    Assistant United States Attorneys
    *Attorney for Defendant John Ashcroft*

  WOLIN & WOLIN
    420 Jericho Turnpike, Suite 215
    Jericho, NY 11753
  By: Jerold D. Wolin
    *Attorneys for Defendants Richard Diaz, Mario Machado,*
     *and Michael DeFrancisco*

  CROWELL & MORING LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, DC 20004
  By: Michael L. Martinez
    David Bell
    Justin Murphy
    *Attorneys for Defendant Dennis Hasty*

  FELDESMAN TUCKER LEIFER FIDELL LLP
    2001 L Street, N.W.
    Washington, DC 20036
  By: Cary M. Feldman
    Robert A. Graham
    Matthew S. Freedus
    *Attorneys for Defendant Nora Lorenzo*

KENNETH L. WAINSTEIN
    United States Attorney for the
        District of Columbia
    Judiciary Center Building
    555 4th St., N.W.
    Washington, DC  20530
By:    R. Craig Lawrence
    Assistant United States Attorney
    *Attorney for Defendant Robert Mueller*

FLEMING ZULACK WILLIAMSON ZAUDERER LLP
    One Liberty Plaza, 35th Floor
    New York, New York  10006
By:    Linda M. Marino
    Bonnie Walker
    *Attorneys for Defendant Linda Thomas*

LAW OFFICES OF WILLIAM ALDEN McDANIEL, JR.
    118 West Mulberry Street
    Baltimore, Maryland  21201
By:    William Alden McDaniel, Jr.
    Bassel Bakhos
    *Attorneys for Defendant James Ziglar*

JOHN GLEESON, United States District Judge:

The plaintiffs are five Israeli nationals who were illegally present in the United States on September 11, 2001. They allege they were arrested that day on immigration violations and detained thereafter in the Metropolitan Detention Center in Brooklyn until they were eventually deported. Their allegations are strikingly similar to those in *Elmaghraby v. Ashcroft*, 2005 WL 2375202 (E.D.N.Y. 2005), and *Turkmen v. Ashcroft*, 2006 WL 1662663 (E.D.N.Y. 2006); indeed many are lifted verbatim from those complaints. Unlike in those cases, however, I have no occasion to turn to the merits of the plaintiffs' claims, for despite having been given generous extensions of time in which to effect proper services of process upon the United States, the plaintiffs' counsel has failed to do so. Specifically, counsel has been steadfast in his refusal

to serve the United States by registered or certified mail, as required by the governing rule of procedure. As a result, the action is dismissed.

BACKGROUND

The plaintiffs filed the initial complaint in this matter on September 13, 2004, and then filed an amended complaint on September 21, 2004. On January 11, 2005 -- the last of the 120 days allowed for service of process under Fed. R. Civ. P. 4(m) -- the plaintiffs' counsel sought an additional 60 days in which to effect service because doing so had "proved more difficult than ... anticipated ...." That request was granted on January 14, 2006, and the plaintiffs soon made some headway: On February 2, 2005, counsel for defendant John Ashcroft wrote a letter to plaintiffs' counsel agreeing to waive personal service upon Ashcroft:

> As you are aware, in the above-mentioned litigation, this office [the United States Attorney's Office for the Eastern District of Virginia] is responsible for the representation of Attorney General John Ashcroft, in his individual capacity. I am in receipt of the waiver of service form that you have sent to me, and the instant correspondence concerns the same.
>
> My client has authorized me to accept your offer, and thus not require a process server to effectuate personal service upon him. As I am sure you understand, my client's decision in this regard in no way should be construed as waiving any cognizable defenses.

Letter of Assistant U.S. Attorney ("AUSA") Dennis C. Barghaan, Jr. dated February 2, 2005.

On March 25, 2005, however, more than a week after the plaintiffs' 60-day extension had expired, Ashcroft's counsel filed a letter requesting permission to move to dismiss on the ground, among others, that the plaintiffs had failed to effectuate proper service. Specifically, AUSA Barghaan observed that proper service in the case required more than personal service on Ashcroft, and plaintiffs' counsel had not taken the required steps:

4

> [P]laintiffs have failed to effectuate proper service of process upon the former Attorney General. Pursuant to Federal Rule 4(i)(2)(B), service upon an officer of the United States sued in his individual capacity requires (1) personal service upon the officer; (2) "delivering a copy of the summons and complaint" to the United States Attorney's Office for the district in which the action is pending; and (3) "sending" a copy of the same to the Attorney General via "registered or certified mail." Although the former Attorney General has agreed to waive service upon *him*, it is undersigned counsel's understanding that plaintiffs have not accomplished the final two service requirements.

Letter of AUSA Barghaan dated March 25, 2005. It was not until a week after that letter, and 20 days after the extended deadline for service had passed, that the plaintiffs' counsel requested, *nunc pro tunc*, a further "modest" extension of time, again because "difficulties were encountered," including that "many of the defendants are government employees whose whereabouts have been difficult to ascertain." Letter of Robert Tolchin dated April 4, 2005.

On April 20, 2005, this case was reassigned from Magistrate Judge Cheryl Pollak to Magistrate Judge Steven Gold because Judge Gold was already handling the *Elmaghraby* and *Turkmen* cases. Judge Gold set all three cases down for a joint status conference shortly thereafter, and directed the parties to identify "any outstanding issues that need to be addressed" at the conference. Ashcroft, Mueller, Ziglar and Hawk-Sawyer filed a joint letter, again calling attention to the deficient service of process: "Plaintiffs have not effectuated proper service of process upon any of these individuals; indeed, plaintiffs have not effectuated any service upon Messrs. Mueller and Ziglar .... Mr. Ashcroft has only waived personal service upon him." Letter of AUSA Barghaan dated April 29, 2005. A footnote to that statement reminded plaintiffs' counsel that "[s]ervice upon a federal officer sued in his individual capacity for acts taken 'in connection with the performance of duties on behalf of the United States' has three components: (1) personal service on the officer; (2) service upon the relevant United States Attorney's Office;

5

and (3) service upon the Attorney General. Fed. R. Civ. P. 4(i)(2)(B)." *Id*. at n.1. At the subsequent status conference, Judge Gold ruled that the "*Kurzburg* plaintiffs' oral motion for additional time to accomplish service [is] denied without prejudice to [their] submit[ting] a formal motion seeking that relief." Order of May 9, 2005.

On May 12, 2005, the plaintiffs filed such a motion, seeking, pursuant to Fed. R. Civ. P. 4(i)(2)(B)(3), "a reasonable time ... to cure the failure to serve any defendant who has not been served with process in this action," Pl. Notice of Motion, and alternatively, pursuant to Fed. R. Civ. P. 4(m), a second enlargement of time in which to effectuate proper service. The plaintiffs argued that because "[t]here is no question that the Attorney General of the United States has been served," that a reasonable time to cure the failure of service was mandatory under Rule 4(i)(2)(B)(3). In response, after again reciting the requirements of Rule 4(i)(2)(B), Ashcroft explained:

> Plaintiffs cannot argue that effecting service upon the Attorney General personally (through a waiver of service form to his *individual capacity* counsel in *Alexandria, Virginia*) is sufficient to effectuate service on the Attorney General *officially*. This Court has held that this third and final element of individual capacity service must be fulfilled regardless of whether the Attorney General has been provided with notice of the summons and complaint in some other fashion. *See Hegmann v. United States*, 745 F. Supp. 886, 889-91 (E.D.N.Y. 1990) (citing *Messenger v. United States*, 231 F.2d 328, 330-31 (2d Cir. 1956)).

Def. Ashcroft's Mem. in Opposition to Pl. Motion to Enlarge Time to Serve, May 26, 2005, at 5 n.4. Additionally -- and for the third time -- Ashcroft pointed out that the plaintiffs "have yet ... to [direct] a copy of the summons and complaint to the Attorney General *via certified or registered mail in the District of Columbia*." *Id*. at 8 (emphasis in original).

In reply, the plaintiffs argued that

6

> The position taken by defendant John Ashcroft is, frankly, professionally offensive. Mr. Ashcroft's counsel asserts that when he agreed to accept service, he was actually in code agreeing to accept only a part of service, and that plaintiff [sic] should have known this. This sort of lay-in-wait trick -- what might be called "gotcha litigation" -- is rather unseemly, particularly from the Justice Department.

Pl. Reply in Support of Motion to Enlarge Time to Serve, July 8, 2005, at 2. The plaintiffs went on to say that because defendant Ashcroft's counsel "himself works for the Attorney General's office" as an AUSA in the Eastern District of Virginia, "the Attorney General's office has thus been aware of this case and actively litigating it." *Id*. at 3.

In a Memorandum and Order dated December 19, 2005,[1] Judge Gold concluded that the plaintiffs were not entitled to a reasonable opportunity to cure defective service under Rule 4(i)(3)(A) because that provision applies only to actions governed by Rule 4(i)(2)(A), which in turn is applicable where an officer or employee of the United States is sued only in an official capacity. The plaintiffs' *Bivens* claims, of course, are brought against federal officers and employees in their individual capacities. *See Armstrong v. Sears*, 33 F.3d 182, 185-86 (2d Cir. 1994) ("[A] *Bivens* action ... by definition and established precedent is brought against defendants only in their individual capacities"), *overruled on other grounds* by Rule 4(i)(2)(B), 2000 Amendments.

With respect to the plaintiffs' alternative request for an extension of time under Rule 4(m), Judge Gold concluded that the plaintiffs "failed to put forth any compelling explanation of their failure to accomplish service within the 120 days provided by Rule 4 or the

---

[1] At oral argument on the instant motions to dismiss, the plaintiffs' counsel represented that he had filed a motion requesting "leave to serve" process during the time that his motion for a second extension of time was pending, and that because "there had been no decision" on that request, he understood that "during that time [plaintiffs] were not at liberty to serve." Tr. of Aug. 25, 2006, at 21. Accordingly, counsel stated, he did not resume efforts to effect service until Judge Gold's Order of December 19, 2005 issued. The docket reflects no such motion from plaintiffs' counsel.

additional 60 days granted [in the first extension]." Despite the lack of good cause for the failure, however, Judge Gold allowed the plaintiffs a discretionary extension of an additional 60 days, until February 20, 2006, because the statute of limitations had already run on the plaintiffs' claims. In closing, Judge Gold gave the following warning:

> I make this decision with some reluctance. As noted above, plaintiffs have failed to demonstrate that they made diligent efforts to serve defendants. They have failed to explain what specific steps they took during the extended period of time for service authorized by [the first extension], or how they intend to accomplish service during the further extension of time I have decided to grant them. Moreover, they failed to seek additional time for service until more than two weeks after their original extension had expired. Nevertheless, the law favors the disposition of claims on their merits, and I therefore grant plaintiffs' motion for additional time to accomplish service. ... For the reasons just enumerated, however, this will be the final extension of time plaintiffs will be granted by this court.
>
> ...
>
> *I will grant no further extensions of time*.

Order of Dec. 19, 2005 at 7 (emphasis supplied).

Notwithstanding that admonition, the plaintiffs failed to effect personal service on 12 individual defendants before the February 20, 2006 deadline. At Judge Gold's instance, the plaintiffs agreed to dismissal as to nine of those defendants, but not with respect to defendants Nora Lorenzo, Dennis Hasty, and Marcial Machado, whom the plaintiffs had served shortly after the deadline. Additionally, and of central importance here, the plaintiffs never sent "a copy of the summons and complaint *by registered or certified mail* to the Attorney General of the United States at Washington, District of Columbia." Fed. R. Civ. P. 4(i)(1)(C) (emphasis added). Rather, three days before the expiration of the time allowed by Magistrate Judge Gold, the

plaintiffs sent a copy of the summons and complaint to the "Attorney General Department of Justice mailing address in Washington, D.C." by first class mail. Pl. Br. at 3 n.1.

DISCUSSION

The defendants, all of whom are sued in their "individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States," Fed. R. Civ. P. 4(i)(2)(B),[2] move to dismiss on the ground, among others, that the plaintiffs have failed to effect proper service on the United States by sending a copy of the summons and complaint to the Attorney General in Washington, D.C. by registered or certified mail, as required by Fed. R. Civ. P. 4(i)(1)(B). The plaintiffs, for their part, argue that "the purpose of service, and all the rules governing service, is to ... give fair notice to those fairly entitled to be on notice of lawsuits, [and that] in this case the plaintiffs actually did better than serving by certified or registered mail" by obtaining a waiver of service form from defendant John Ashcroft dated February 2, 2005, one day before he left office as Attorney General. Pl. Br. at 3.

>Rule 4(i)(2)(B) provides:
>
>Service on an officer or employee of the United States sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States -- whether or not the officer or employee is sued also in an official capacity -- is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by serving the officer or employee in the manner prescribed by Rule 4 (e), (f), or (g).

The "manner prescribed by Rule 4(i)(1)" for serving the United States is as follows:

---

[2] Although some of the named defendants are now former employees of the United States, the Advisory Committee notes to the 2000 Amendments to Rule 4(i) confirm that "[a]n action against a former officer or employee of the United States is covered by paragraph 2(B) in the same way as an action against a present officer or employee. Termination of the relationship between the individual defendant and the United States does not reduce the need to serve the United States."

9

> (1) Service upon the United States shall be effected (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought ... and (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia ....

In suits such as this -- against federal employees "sued in an individual capacity for acts or omissions occurring in connection with the performance of duties on behalf of the United States," Fed. R. Civ. P. 4(i)(2)(B) -- Rule 4 thus makes clear that service upon the individual officer is not alone sufficient; indeed, Rule 4(i)(2)(B) mentions this individual service requirement second. The first requirement -- joined to the second by the unambiguous "and" -- is that service must be effected upon the United States, which itself requires two actions: (1) service upon the United States Attorney for the district in which the action is pending in "the manner prescribed"; and (2) service upon the Attorney General of the United States at Washington, District of Columbia "*by registered or certified mail*."[3] The latter two requirements are joined by the phrase "*and* by *also*," driving home that both are essential.

        The plaintiffs claim to have improved upon that scheme by creating an exception to the requirement of service upon the Attorney General officially when the Attorney General himself is named as a defendant and service has been made upon him individually. Their method kills two birds with one stone, the plaintiffs argue, since the Attorney General is one of the officials designated by the Rule to accept service on behalf of the United States. As described earlier, the plaintiffs are so convinced of the wisdom of their proposed exception that they

---

[3] As the Advisory Committee Notes to the 2000 Amendments explain, although prior case law had given "uncertain guidance on the question," paragraph (2)(B) was added to Rule 4(i) "to require service on the United States when a United States officer or employee is sued in an individual capacity for acts or omissions occurring in connection with duties performed on behalf of the United States .... Service on the United States will help to protect the interest of the individual defendant in securing representation by the United States, and will expedite the process of determining whether the United States will provide representation."

criticize the defendants' insistence that Rule 4(i) be applied as written as "professionally offensive" and "rather unseemly."

The plaintiffs are not charged with crafting the Federal Rule of Civil Procedure; they are charged with following them. And their proposed construction of Rule 4(i) -- conflating federal officers' individual and official capacities -- is a wrecking ball. Even a glance at the structure of Rule 4(i) makes clear that the distinction is to be strictly observed: Rule 4(i)(1) prescribes how service is to be effected upon the United States; Rule 4(i)(2) then identifies two types of actions against officers or employees of the United States, namely (A) those containing only official-capacity claims, and (B) those against federal officials individually for acts undertaken as government officers or employees, and it prescribes different service requirements for each. Rules 4(i)(3)(A) & (B) divide along the same line, i.e., between official- and individual-capacity actions, and consequences similarly flow from the difference.

In the face of this meticulous effort by the drafters of Rule 4(i) to keep separate officers' individual and official capacities, the plaintiffs propose a blending of them in cases where the Attorney General happens to be sued in his individual capacity. The argument is unpersuasive. Rule 4(i), by its plain text, requires service both upon the individual defendant and upon the United States officially; one will not suffice for the other. Neither within the twice-enlarged time period nor to this day have plaintiffs sent "a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia." They therefore have not met the requirements of Rule 4(i).

Plaintiffs' counsel's contention that the defendants have engaged in "gotcha litigation" is frivolous. Nothing in the letter from defendant Ashcroft's counsel agreeing to

11

waive service even remotely induced the plaintiffs' failure.  AUSA Barghaan explicitly stated that he was "responsible for the representation of Attorney General John Ashcroft, *in his individual capacity*" and that the effect of the waiver was simply that the plaintiffs need "not [send] a process server to effectuate personal service upon him."  Letter of AUSA Barghaan, dated February 2, 2005.  Even if plaintiffs' counsel somehow conjured a misconception from that rather plain language, it must have been dispelled by AUSA Barghaan's next letter, dated March 25, 2005, which stated that "plaintiffs have failed to effectuate proper service of process upon the former Attorney General .... [because]  [a]lthough the former Attorney General has agreed to waive service upon *him*, it is undersigned counsel's understanding that plaintiffs have not accomplished the final two ... requirements" of service upon the United States.

    I am aware that Rule 4(i)(3)(B) requires that "[t]he court shall allow a reasonable time to serve process under Rule 4(i) for the purpose of curing the failure to serve ... the United States in an action governed by Rule 4(i)(2)(B), if the plaintiff has served an officer or employee of the United States sued in an individual capacity."  The purpose of this allowance is to "save[] the plaintiff from the hazard of losing a substantive right because of failure to comply with the complex requirements of multiple service under [subsection 4(i)]," a risk which "has proved to be more than nominal."  Advisory Comm. Notes to 1993 Amendments, citing *Whale v. United States*, 792 F.2d 951 (9th Cir. 1986).  In the Notes to the 2000 Amendments, the Advisory Committee reiterated that policy, namely, that the cure provision exists "to ensure that failure to serve the United States in an action governed by paragraph 2(B) does not defeat an action."  As the Committee further explained, "[a] reasonable time to effect service on the United States must be allowed after the failure is pointed out."  Thus, in proper circumstances, Rule 4(i)(3)(B) would

12

provide the plaintiffs a break, at least with respect to the individual defendants upon whom they effected timely individual service (a group that does not include defendants Nora Lorenzo, Dennis Hasty, and Marcial Machado). But this case does not present such circumstances. As discussed above, plaintiffs' counsel's failure to serve the United States was first pointed out to him in March 2005, 18 months ago. From then until the February 20, 2006 deadline, he had 330 days in which to cure it by making the required trip to the post office. Additional notifications of his failure to were made in April and May of 2005. To this day, proper service has not been made on the United States, and even in response to the instant motion, plaintiffs have not asked for such an opportunity to make it. "Not by any stretch of the imagination is this 'reasonable'." *Tuke v. United States*, 76 F.3d 155, 158 (7th Cir. 1996). Thus, even supposing I am obliged to consider the matter *sua sponte*, I would not afford plaintiffs further relief pursuant to Rule 4(i)(3)(B). That provision does not create an entitlement to endless reprieves. It allows a "reasonable time," which has long passed. Plaintiff's counsel was explicitly warned by order of Judge Gold in December 2005 that no further extensions of time would be granted. Court orders, like the Federal Rules of Civil Procedure, mean what they say.

I am also aware, as was Judge Gold, that the statute of limitations has run on the plaintiffs' claims, and that dismissal for failure to serve process upon the United States will, in effect, deprive them of claims that may have merit. In our adversary system, however, "civil litigants are bound by the acts and omissions of their freely selected attorneys," *Reilly v. NatWest Markets Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999); *see also S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("[A]llowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in

13

which each party is deemed bound by the acts of his lawyer-agent.") (internal quotation marks omitted). The plaintiffs were fortunate that Judge Gold granted them, despite the lack of good cause, a second extension of time, which they had not even requested until well after their previous extension had expired. And they were given ample notice, both by the plain text of Rule 4(i) and by the repeated statements of defendants' counsel, that they had failed to accomplish proper service upon the United States. Counsel's failure to carry out that simple task during the 60 days that Judge Gold made plain would be the last extension is inexcusable. *See Tuke*, 76 F.3d at 156 (counsel's failure properly to serve the United States "has cost his client the litigation and exposes [counsel] to a suit for malpractice").

In sum, the plaintiffs are not entitled to another opportunity to cure their failure to accomplish proper service upon the United States as required by Rule 4(i), and therefore, pursuant to Rule 4(m), dismissal is required. *See* Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.").

CONCLUSION

For the reasons set forth above, the action is dismissed pursuant to Rule 4(m) for failure to effect service of process upon the United States. Plaintiffs' counsel is hereby directed to serve (by registered or certified mail) a copy of this decision, together with any necessary

translation of the decision, on each of his clients, and to file an affirmation within 14 days confirming that such service has been made.

So ordered.


John Gleeson, U.S.D.J.

Date: Brooklyn, New York
      September 25, 2006